UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOE HAND PROMOTIONS, INC.,              :

                     Plaintiff,     :     REPORT & RECOMMENDATION
   -against-                          :     19-CV-788 (NG) (SMG)

ROBERT DISLA and NORTHERN CAFÉ, INC.,   :
d/b/a/ NORTHERN CAFÉ

              Defendants.     :

-----------------------------------------------------------------x
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Joe Hand Promotions, Inc., ("Joe Hand") brings this action against defendants, Robert Disla and Northern Café, Inc., (collectively "defendants"), alleging that they unlawfully intercepted and misappropriated a closed circuit television exhibition of a boxing match held on August 26, 2017 between Floyd Mayweather, Jr. and Conor McGregor (the "event") in violation of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 553 and 605, and the Copyright Act, 17 U.S.C. § 101 *et seq*. Complaint ("Compl.") ¶¶ 1, 6, 23, Dkt. 1. Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered defendants' default on April 25, 2019. Dkt. 12. Plaintiff now moves for default judgment. Mot. for Default J., Dkt. 14. United States District Judge Nina Gershon has referred plaintiff's motion to me for report and recommendation.

## DISCUSSION

**I.     Liability**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," plaintiff may apply to the court for a default judgment. Fed. R. Civ. P. 55(a).  Once a default is entered, moreover, "a court is required to accept all…factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) (same).

A.   Federal Communications Act, Section 605(a)

Plaintiff has alleged violations of the FCA under Section 605(a) and 553(a). Section 605 "generally prohibits the unauthorized use or publication of wire or radio communications," *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), while Section 553(a) "prohibits theft of services offered over a cable system," *J & J Sports Prods., Inc. v. Ferreiras*, 2018 WL 6168557, at *9 (E.D.N.Y. Nov. 20, 2018). "[T]he term 'radio communication,' as used in [Section 605(a)], has long been understood to include satellite transmissions." *J & J Sport Prods., Inc. v. Nacipucha*, 2018 WL 2709222, at *3 (E.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 WL 2709200 (E.D.N.Y. June 5, 2018); *see also Garden City Boxing Club, Inc. v. Focused Enters., Ltd.*, 2007 WL 1655647, at *2 (E.D.N.Y. June 6, 2007) ("Because [plaintiff] alleges that the Event was conveyed via satellite transmission, it has properly pleaded a claim under § 605(a).").  Thus, to make out a claim under section 605(a),

2

plaintiff must have transmitted the event by satellite and defendant must have intercepted it without authorization.

Here, plaintiff alleges that defendants intercepted its signal, which "originated via satellite uplink, and [was] then re-transmitted via satellite or microwave signal to various cable and satellite systems." Compl. ¶ 25. Defendants then displayed the event in a commercial setting without plaintiff's permission. *Id.* ¶ 24. Thus, plaintiff has stated a claim under Section 605(a).

Though plaintiff is unable, without discovery, to identify the exact method Northern Café used to intercept the broadcast, *id.* ¶ 25, "all that needs to be alleged (to state a § 605 claim) is that the communication *originated* via satellite." *Ferreiras*, 2018 WL 6168557, at *7; *see also Joe Hand Promotions, Inc. v. Bernal*, 2019 WL 885930, at *3 (E.D.N.Y., Feb, 22, 2019) ("[A]ny one of the various technologies by which [plaintiff's] satellite broadcast could have been intercepted is sufficient to establish liability.").[1]

B. *Federal Communications Act, Section 553*

Conduct that violates Section 605(a) may also violate Section 553(a). *Int'l Cablevision v. Sykes*, 75 F.3d 123, 132–33 (2d. Cir. 1996). When it does, liability need be considered only under Section 605(a), which provides for a greater recovery. *See Bernal*, 2019 WL 885930, at *2; *J & J Sports Prods., Inc. v. El Sonador Café Rest., Inc.*, 2017 WL 6397731, at *2 (E.D.N.Y. Dec. 14, 2017); *Kingvision Pay-Per-View v. Castillo Rest. Corp.*, 2007 WL 841804, at *3 (E.D.N.Y. Jan. 16, 2007).

---

[1] In contrast, a handful of J & J Sports Production cases have failed to state a claim under Section 605(a) because they do not specify the method through which the *plaintiff* transmitted the material as opposed to identifying how the defendant intercepted the material. *See J & J Sports Prods., Inc. v. Ferreiras*, 2018 WL 6168557, at *6 (E.D.N.Y. Nov. 20, 2018) (refusing to grant liability under 605(a) where the "[c]omplaint never allege[d] that the Event was transmitted over satellite or that it was a satellite communication").

3

C. *The Copyright Act*

Plaintiff further claims that defendants are liable under the Copyright Act. Compl. ¶¶ 37–46. Infringement under the Copyright Act occurs when one "violates any of the exclusive rights of the copyright owner," 17 U.S.C. § 501(a), including the right "to distribute copies…of the copyrighted work," 17 U.S.C. § 106(3), and the right "to perform the copyrighted work publicly," 17 U.S.C. § 106(4). *Joe Hand Promotions, Inc. v. Levin*, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019). Plaintiff asserts that it was the registered copyright owner and held "the exclusive rights of distribution and public performance as to commercial establishments to the [event], including all undercard matches and the entire television [event], scheduled for August 26, 2017." Compl. ¶ 38. Plaintiff may therefore also recover under the Copyright Act. *See Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 847 (2d Cir. 1997) ("recorded broadcasts of [sporting events] ... are ... entitled to copyright protection").

D. *Liability of Individual Defendant*

Plaintiff seeks to hold defendant Robert Disla individually liable for the display of the event at Northern Café. Compl. at 10. Establishing individual liability under Section 605(a) requires showing either "contributory infringement," which arises when the individual "authorize[d] the violations," or "vicarious liability," which arises when the individual "had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." *J & J Sports Prods., Inc. v. Tellez*, 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011) (citing *J & J Sports Prods., Inc. v. LDG Williams, LLC*, 2011 WL 5402031, at *5–*6 (E.D.N.Y. Nov. 7, 2011)). Under the Copyright Act, individual defendants may likewise be held liable for "participat[ing] in and supervis[ing] the infringing activities." *Yash Raj Films (USA), Inc. v. Adda Rong, Inc.*, 2010 WL 1270013, at

4

\*3 (E.D.N.Y. Mar. 12, 2010), *report and recommendation adopted*, 2010 WL 1286358 (E.D.N.Y. Mar. 30, 2010).

Courts in this district considering motions for default judgments have required more particularized allegations than those based solely on an individual defendant's position as "officer, director, shareholder and/or principal." *See, e.g., J & J Sports Prods., Inc. v. Hot Shotz Sports Bar Inc.*, 2018 WL 5020175, at \*5–\*6 (E.D.N.Y. July 13, 2018), *report and recommendation adopted by*, 2018 WL 4627666 (Sept. 27, 2018). Specifically, courts consider whether a plaintiff has alleged that the defendant "was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it." *J & J Sports Prods., Inc., v. 291 Bar & Lounge LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (rejecting individual liability where those allegations were left out of the complaint); *see also Bernal*, 2019 WL 885930, at \*3 (granting individual liability where the individual defendant was "present during the exhibition, and authorized the exhibition").

Plaintiff alleges, "[u]pon information and belief," that Mr. Disla is an "officer, director, shareholder and/or principal" of Northern Café, who was not only present for the event on the night of August 26, 2017, but also authorized the broadcast and received a financial benefit as a result. Compl. ¶¶ 8, 10–13. The complaint also indicates that Mr. Disla resides at the same address as Northern Café, suggesting another degree of control over the business. *Id.* ¶ 7–8. Accepting these allegations as true, plaintiff's complaint supports the inference that Mr. Disla had the "right and ability to supervise the infringing proceedings" and an "obvious and direct financial interest" in any profit made by exhibiting the event at Northern Café. *See Joe Hand Promotions, Inc. v. Kings Point Rest., Inc.,* 2017 WL 6611705, at \*7 (E.D.N.Y. Nov. 3, 2017), *report and recommendation adopted*, 2017 WL 6611571 (E.D.N.Y. Dec. 27, 2017). The Court

therefore recommends that Mr. Disla be held jointly and severally liable with defendant Northern Café for the damages recommended below.

## II. Remedies

### A. Damages

Unlike those concerning liability, allegations relating to damages are not deemed admitted upon default. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Greyhound Exhibitgroup*, 973 F.2d at 158. However, "these steps are not necessary as long as [the court] ensure[s] that there was a basis for the damages specified in the default judgment." *Levin*, 2019 WL 3050852, at *3 (quotation marks omitted) (alterations in original) (quoting *Friedman v. Mission of the Gabonese Republic*, 2018 WL 3094917, at *3 (S.D.N.Y. June 20, 2018)). A court may make this determination upon a review of detailed affidavits and documentary evidence. *See Fustok v. Conticommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989). Here, plaintiff has submitted materials that are sufficient to assess damages without conducting a hearing, as set forth below. *See* Pl.'s Mem. of Law in Supp. of Default J. ("Pl.'s Mem.") at 6–7, Dkt. 14-5.

### B. Section 605 of the FCA

Section 605 provides that a plaintiff may recover either actual damages or statutory damages "of not less than $1,000 or more than $10,000… for each violation." 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages may be increased "by an amount of not more than $100,000

6

for each violation" where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). "Courts have interpreted the showing of an event on a single night as one violation for the purposes of statutory and enhanced damages." *Bernal*, 2019 WL 885930, at *3 (quotation marks omitted) (quoting *El Sonador*, 2017 WL 6397731, at *3). Here, plaintiff requests the maximum amount in statutory damages—$10,000—and an additional $20,000 in enhanced damages for a single violation. Pl.'s Mem. at 12–13.

To determine statutory damages, courts typically calculate the flat-fee rate and the per-person rate and then award the greater of the two. *Hot Shotz*, 2018 WL 5020175, at *7 (collecting cases). The flat-fee rate is "the amount that the establishment would have paid to license the event and broadcast it legally." *Bernal*, 2019 WL 885930, at *4 (citing *J & J Sports Prods., Inc., v. GPN Bar, Inc.*, 2016 WL 8139019, at *5 (E.D.N.Y. Dec. 15, 2016), *report and recommendation adopted*, 2017 WL 435785 (E.D.N.Y. Feb. 1, 2017). To calculate the per-person amount, the court "multiplies the number of patrons in the establishment by the fee that an average customer would pay to view the fight at home on a pay-per-view channel." *Bernal*, 2019 WL 885930, at *4.

Plaintiff has submitted the affidavit of its president, which attaches a rate card as an exhibit. Pl.'s Aff., Dkt. 14-1, and Rate Card, Pl.'s Ex.,[2] Dkt. 14-2. The rate card indicates that the license to display the event lawfully would have cost defendants $3,700. Plaintiff has not submitted any information about the rate a customer would have paid to watch the event at home. There were, however, only two patrons viewing the event at Northern Café on the night in question. Site Inspection Report, Pl.'s Ex. at 17-18, Dkt. 14-2. Accordingly, any per-person

---

[2] The page numbers of the plaintiff's exhibits refer to the page numbers of the ECF filing, Dkt 14-2.

7

calculation would result in damages significantly less than the flat-fee amount of $3,700 or even the statutory minimum of $1,000.

For all these reasons, the Court respectfully recommends an award of $3,700 in statutory damages. *See Bernal*, 2019 WL 885930, at *4–*5 (awarding flat-fee amount where plaintiff failed to provide both the number of patrons and the pay-per-view price of the event).

Plaintiff is also entitled to enhanced damages given defendants' willful violation of the statute. Willfulness is generally "presumed in cases arising under § 605 where the defendant defaults." *Bernal*, 2019 WL 885930, at *5; *see also Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously nor do television sets connect themselves to cable distribution systems."). In calculating enhanced damages, "[c]ourts in this Circuit typically award…a multiple of the statutory damages award." *Hot Shotz*, 2018 WL 5020175, at *9 (collecting cases). A court's decision to award an amount equal to, double, or triple the statutory damages depends on factors such as "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Id.*; *see also Traffic Sports USA v. La Camisa Negra Rest. & Bar Corp.*, 2012 WL 3064129, at *5 (E.D.N.Y. May 23, 2012), *report and recommendation adopted*, 2012 WL 3065523 (E.D.N.Y. July 27, 2012) (collecting cases).

District courts tend to award enhanced damages equal to the statutory award when, despite some evidence of willfulness, defendants are first-time offenders, running small-scale operations. *See Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *9 (E.D.N.Y. May 25, 2018) (granting enhanced damages in amount equal to statutory in case where defendants

8

advertised the event on Facebook but there was no evidence that defendants had previously violated the statute or collected a cover charge); *Joe Hand Promotions, Inc. v. Martinez*, 2008 WL 4619855, at *6 (S.D.N.Y. Oct. 17, 2008) (awarding enhanced damages equal to the statutory damages awarded given "the absence of any indication that plaintiff ha[d] previously sought enforcement against these defendants, the lack of evidence that this establishment was a sizeable or up-scale venue earning significant amounts of money from this practice, and the small number of patrons found by the investigator" even though defendants' violation seemed to be "part of a pattern of behavior"); *Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec Y Caridad, Inc.*, 2001 WL 1586667, at *3 (S.D.N.Y. Dec. 12, 2001) (awarding enhanced damages equal to half of the statutory damages awarded because defendants had not pirated other events, advertised the fight, or charged a cover and because "the fight was broadcast on only one small 27 inch color television").

 Here, the only willful conduct alleged, besides the pirating itself, is that defendants advertised the event on Facebook. Compl. ¶ 23. Beyond that, plaintiff has neither alleged nor offered any evidence that defendants charged a cover or are repeat offenders. Moreover, the site inspection report submitted by plaintiff indicates that plaintiff's auditor observed only two persons present when he saw the event being displayed and the pictures taken by the auditor show a practically empty diner. Site Inspection Report; Photographs, Pl.'s Ex. at 21–22, Dkt. 14-2. The report and photographs strongly suggest that defendants did not profit in any meaningful way by displaying the event. Plaintiff's request for $20,000 in enhanced damages therefore seems extreme. "[A]lthough the amount of damages should be an adequate deterrent, a single violation is not so serious as to warrant putting the restaurant out of business." *Bernal*,

9

2019 WL 885930, at *6 (quoting *J & J Sports Prods., Inc. v. El Sonador Café Rest., Inc.*, 2015 WL 1928757, at *4 (E.D.N.Y. Apr. 28, 2015)).

For all these reasons, the Court recommends that plaintiff be awarded $3,700 in enhanced damages pursuant to Section 605(e)(3)(C)(ii), an amount equal to the statutory damages award recommended above.

C. *The Copyright Act*

Plaintiff requests an additional award under the Copyright Act of $15,000 in statutory damages plus $30,000 for defendants' willful violation. Pl.'s Mem. at 23. Like the FCA, the Copyright Act permits a plaintiff to elect to recover statutory rather than actual damages. 17 U.S.C. § 504(a). The statutory damage minimum is $750, while the maximum is $30,000. 17 U.S.C. § 504(c)(1). "In a case where … the court finds [] that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

To determine the amount of statutory damages to award for violations of the Copyright Act, courts consider factors similar to those evaluated under the FCA, including:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Larger damage amounts are therefore likely to be awarded under the Copyright Act for the same reasons as under the FCA, such as evidence of advertising or charging a cover fee. *See Levin*, 2019 WL 3050852, at *5.

10

"[I]t is appropriate to award damages under both the Copyright Act and the FCA [because] [e]ach Act vindicates separate rights." *Maupin*, 2018 WL 2417840, at *8 (collecting cases). "Ultimately, however, it is the Court's obligation to enter an award that it 'considers just.'" *Premium Sports, Inc. v. Mendes*, 2018 WL 2078488, at *10 (E.D.N.Y. Mar. 1, 2018) (quoting 17 U.S.C. § 540(c)(1)). For this reason, courts have exercised "broad discretion in setting the amount of statutory damages under the Copyright Act" by taking into account the award already granted under the FCA. *Levin*, 2019 WL 3050852, at *5 (quotation marks omitted) (citing *Arclightz & Films Pvt., Ltd. v. Video Palace, Inc.*, 303 F. Supp. 2d 356, 362 (S.D.N.Y. 2003)). This consideration generally leads to a relatively modest Copyright award. *See Joe Hand Promotions, Inc. v. Aguilar*, 2019 WL 4071776, at *4 (D. Md. Aug. 29, 2019) (awarding $21,900 under the FCA and statutory minimum of $750 under the Copyright Act); *Levin*, 2019 WL 3050852, at *6 (awarding $35,000 under the FCA and $7,000 under the Copyright Act, or 20% of the amount the Court would have awarded absent the FCA recovery); *Joe Hand Promotions, Inc. v. Garcia-Nunez*, 2019 WL 2437456, at *3 (D. Or. June 11, 2019) (awarding $13,000 under the FCA and denying damages under the Copyright Act altogether); *Premium Sports*, 2018 WL 2078488, at *9–*10 (awarding a total of $8,000 damages under the FCA and $2,000 under the Copyright Act); *Top Rank, Inc. v. Ortiz*, 2003 WL 1960211, at *4 (S.D.N.Y. Mar. 27, 2003) (awarding $750 in statutory damages and $750 in enhanced damages under the Copyright Act).

For these reasons, the Court recommends an award under the Copyright Act of $2,000— $1,000 in statutory damages plus an additional $1,000 for the willfulness of the violation.

11

D. *Attorneys' Fees and Costs*

As the prevailing party, plaintiff is entitled to reasonable attorneys' fees and costs under the FCA. 47 U.S.C. § 605(e)(3)(B)(iii). The court may also, in its discretion, grant attorneys' fees and costs under the Copyright Act. 17 U.S.C. § 505.

Plaintiff requests a total of $2,051.50 in attorneys' fees and $1,607.50 in costs.[3] Aff. of Att'y in Supp. of Default Mot. ("Att'y Aff.") at 4–5, 9, Dkt. 14-3. The attorneys' fees of $2,051.50 account for 13.10 hours of work completed by a partner at the rate of $350/hour, an associate attorney at the rate of $275/hour, and a paralegal at the rate of $95/hour. *Id.* at 5, 9. The partner, Julie Lonstein, and the paralegal have twenty-seven and thirty years of experience, respectively, while the associate attorney has only one. *Id.* at 5. The associate attorney's rate is therefore reduced to $200 to reflect his limited experience and to conform with hourly rates more typically awarded in this district for junior associates. *See e.g., N.Y.C. Dist. Council of Carpenters v. Trustees of N.Y.C. Dist. Council of Carpenters Welfare Fund*, 2018 WL 3768586, at *3 (E.D.N.Y. July 23, 2018) ("Courts in the Eastern District of New York have approved hourly rates ranging from $200 to $400 per hour for partners, $200 to $300 per hour for senior associates, $100 to $200 per hour for more junior associates, and $85 to $100 per hour for paralegals."), *report and recommendation adopted sub nom. Trustees of N.Y.C. Dist. Council of Carpenters Welfare Fund v. Best Made Floors, Inc.*, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018).

Furthermore, and though plaintiff has submitted a detailed affidavit describing the attorneys' work in accordance with *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711

---

[3] Plaintiff's request for attorneys' fees and costs confusingly suggests that plaintiff is seeking separate awards for each defendant, and under the FCA and Copyright Act, for what is presumably the same work. Aff. of Att'y in Supp. of Default Mot. ("Att'y Aff.") at 13, Dkt. 14-3. Plaintiff is of course entitled to only one award of fees and costs.

12

F.2d 1136, 1148 (2d Cir. 1983), plaintiff's calculations do not add up. The time logged in the day-by-day entries in the attorney affidavit amounts to 11.80 hours rather than the 13.10 claimed on page 9; the associate attorney completed 2.5 hours of work, as opposed to the 3.9, and the paralegal completed 9 hours of work, as opposed to 9.20. Att'y Aff. at 4–9. In fact, even the totals set forth at the end of the individual entries are incorrectly added. *Id.* at 9. Re-calculated based on a reduced associate fee and according to the hourly log, plaintiff is granted $1,460 in attorneys' fees.

As to costs, the Court finds plaintiff's request for reimbursement of the $400 filing fee and the $457.50 service fee reasonable. *Id.* at 4–5. Plaintiff has submitted an invoice documenting the service fee, *see* Service Invoice, Att'y Ex.[4] at 1–2, Dkt 14-4, and the Court takes judicial notice of the district's filing fee, *Bernal*, 2019 WL 885930, at *6.

Plaintiff requests an additional $750 to cover an auditing fee, also documented in an invoice. Auditing Invoice, Att'y Ex. at 3, 14-4. "Although the Court may direct that investigative costs be awarded, it is not obliged to." *J & J Sports Prods., Inc. v. Rodrigues*, 2007 WL 1726462, at *9 (E.D.N.Y. Apr. 19, 2007). And, like attorneys' fees, parties "requesting investigative costs must supply contemporaneous time records to substantiate the fee request." *Id.* (quotation marks omitted) (quoting *Int'l Cablevision, Inc. v. Noel*, 982 F. Supp. 904, 917 (W.D.N.Y. 1997)). Here, plaintiff submits an invoice that lists the auditor's activities but does not include a statement of the time spent engaged in those activities. Auditing Invoice. The auditor's site inspection report also fails to provide any relevant information, such as how long the auditor spent in Northern Café. Pl. Ex. at 17–19. Finally, neither the invoice nor the inspection report indicates the auditor's hourly rate or describes the experience and credentials

---

[4] The page numbers of the attorneys' exhibits refer to the page numbers of the ECF filing, Dkt 14-4.

13

that justify it. To the contrary, the inspection report and blurry photos accompanying it suggest this was a straightforward, even rushed, job. *See J & J Sports Prods., Inc. v. Smith*, 2007 WL 595090, at *5 (E.D.N.Y. Feb. 22, 2007) ("Plaintiff offers no rationale for an award of $350 for fifteen minutes of investigative work. I therefore recommend that this aspect of plaintiff's claim for fees and costs be rejected."). The Court therefore recommends that plaintiff's request for investigative fees be denied.

## CONCLUSION

For all the reasons stated above, I respectfully recommend that plaintiff's motion for default judgment be granted, and that plaintiff be awarded $7,400 under the FCA and $2,000 under the Copyright Act. In addition, I recommend awarding plaintiff $1,460 in attorneys' fees and $857.50 in costs. I further recommend that defendants, Northern Café and Robert Disla, be held jointly and severally liable for the total amount awarded.

Any objections to the recommendations made in this Report must be made within fourteen days after the filing of this Report and Recommendation and, in any event, on or before February 17, 2020. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit). Counsel for plaintiff shall serve a copy of this Report and Recommendation on defendants by letter and promptly file proof of service with the Court.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
February 3, 2020

U:\#ECC 2019-2020\19-788 Joe Hand Promotions, Inc. v. Disla et al\19-788 Joe Hand Promotions, Inc. v. Disla et al. R&R FINAL.docx